Michael C. Li, State Bar No. 190946
mli@northbay-attorneys.com
Joel E. Fleck, State Bar No. 314446
jfleck@northbay-attorneys.com
**NORTH BAY LEGAL A.P.C.**
703 Second Street, Suite 260
Santa Rosa, CA  95404
Telephone: (707) 321-5287
Facsimile: (707) 636-3284
Attorneys for Plaintiff, Mariano Guzman

# United States District Court
# Northern District of California

| | |
|---|---|
| MARIANO GUZMAN, an individual, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT** |
| UNITED STATES OF AMERICA, and DOES 1-50. | |
| Defendants. | **JURY TRIAL DEMANDED** |

1. Plaintiff, Mariano Guzman, ("Mariano" or "Mr. Guzman"), by Counsel, hereby files his Complaint against Defendant United States of America, as follows:

## INTRODUCTION

2. This is an action against Defendant United States of America under the Federal Tort Claims Action (28 U.S.C. section 2671, *et seq*.) and 28 U.S.C. section 1346(b)(1) for negligence and professional malpractice in connection with medical care provided to Mariano by the Department of Veterans Affairs at their San Francisco Medical Center.

///

1

3. The claims herein are brought against Defendant United States pursuant to the Federal Tort Claims Act (28 U.S.C. section 2671, *et seq*.) and 28 U.S.C. section 1346(b)(1) for money damages as compensation for personal injuries caused by Defendant's negligence.

4. Plaintiff Mr. Guzman has fully complied with the provisions of 28 U.S.C. section 2675 of the Federal Torts Claims Act. (Standard Form 95 attached as Exhibit A.)

5. Plaintiff served notice of his claim on both the Department of Veterans Affairs and the United States Department of Justice on February 2, 2017. The underlying events occurred less than two years from serving this notice or the statute of limitation was tolled by Defendant's conduct.

6. Plaintiff Mr. Guzman now files this Complaint pursuant to 28 U.S.C. section 2401(b) after receiving the Department of Veterans Affairs' January 24, 2018 final notice of denial of administrative claim. (See Administrative Tort Claim Denial Letter attached as Exhibit B.)

## PARTIES, JURISDICTION AND PROCEDURAL ISSUES

7. Plaintiff Guzman is and at all relevant times hereto was a resident of Sonoma County, California.

8. Defendant United States of America, through its agency, the Department of Veterans Affairs, operates the Veterans Affairs Medical Center located at 4150 Clement St, San Francisco, CA 94121.

9. Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the Veterans Affairs Medical Center of San Francisco are hereinafter collectively referred to as the "Veterans Affairs Medical Center".

10. At all times relevant to this Complaint, the Veterans Affairs Medical Center held themselves out to Plaintiff as a provider of high quality health care services with the experience to maintain the health and safety of patients like the Plaintiff.

11. At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and/or other staff were employed by and/or were acting on behalf of Defendant United States.

12. Defendant United States is responsible for the negligent acts of their employees and agents under respondent superior.

13. Jurisdiction is proper under 28 U.S.C. section 1346(b)(1).

14. Venue is proper under 28 U.S.C. section 1402(b) due to the fact that all, or a substantial part of acts and omissions forming the basis for the claims in this Complaint occurred in the Northern District of California.

## FACTUAL ALLGATIONS

15. Plaintiff Guzman is a Vietnam War combat veteran, a purple heart recipient, and is both physically and psychologically disabled.

16. After his service, Plaintiff's medical care has been provided by the Department of Veterans Affairs.

17. On or about June 10, 2014, Plaintiff had surgery on his right ankle, which required replacement and installation of supporting hardware.

18. Dr. Andrew Haskell, of Palo Alto, CA performed the ankle replacement surgery at the Veterans Affairs San Francisco Medical Center.

19. After the ankle replacement was completed, no subsequent physical therapy was ordered for Plaintiff's recovery.

20. For the first three months of Plaintiff's recovery, everything appeared to be going well and as expected.

21. However, in October of 2014, something changed in Plaintiff's right leg, causing a sharp pain that ran up his leg to his knee. He could not continue to stand and had to sit down immediately.

22. Due to the pain, Mr. Guzman called Veterans Affairs, who instructed him to come to the emergency room.

23. Mr. Guzman's leg was x-rayed and he was examined.

24. Given the operation which Mr. Guzman had, the Emergency Department could not treat Mr. Guzman other than with pain medications.

25. Mr. Guzman was instructed to follow up with Dr. Haskell for further treatment and diagnosis of the issue.

26. The first available appointment with Dr. Haskell was in February of 2015.

27. In February of 2015, Mr. Guzman met with Dr. Haskell and his leg was examined. At this time, Mr. Guzman continued to be in considerable pain and was continuing to experience swelling.

28. Upon examination of Mr. Guzman in February of 2015, Dr. Haskell told him that the hardware in his ankle was not loose and that Mr. Guzman's symptoms were being caused by arthritis.

29. Mr. Guzman asked for help to control his pain and Dr. Haskell told him that it was unnecessary at that point.

30. Dr. Haskell did prescribe Mr. Guzman a 4-hour pain management class for his symptoms.

31. In or about March of 2015, Mr. Guzman attended the 4-hour pain management class, but it did little to help control his pain.

32. In or about April of 2015, Mr. Guzman met again with Dr. Haskell, who continued to reassure him that the hardware in his ankle was not loose and the pain he was experiencing was caused by arthritis.

33. In or about April of 2015, Mr. Guzman's pain continued and Dr. Haskell gave him a cortisone shot to control the swelling and pain. Dr. Haskell, at this time, ordered physical therapy for Mr. Guzman.

34. Neither the physical therapy nor the cortisone shot was successful in controlling Mr. Guzman's pain, leading to a second cortisone shot in or about May of 2015.

35. This second shot, like the first, did not control Mr. Guzman's symptoms.

36. In June of 2015, Mr. Guzman again reported to Dr. Haskell that he continued to experience a high pain level, inflammation and swelling. Dr. Haskell set an appointment for the following month.

37. In July of 2015, Mr. Guzman, his wife, and Dr. Haskell met. Dr. Haskell refused to conduct further tests on Mr. Guzman's ankle. Dr. Haskell continued to tell Mr. Guzman that his

4

symptoms were caused by arthritis. Dr. Haskell did not believe the pain level that Mr. Guzman was experienced. Dr. Haskell sent Mr. Guzman home without further treatment.

38. At no time from when Mr. Guzman went to Dr. Haskell after his emergency room visit, did he ever conduct or refer Mr. Guzman for diagnostic imagery such as an x-ray.

39. Frustrated with Dr. Haskell's treatment and continuing to be in pain, Mr. Guzman sought a second opinion, through the Veteran Affairs in August of 2015.

40. In or about October of 2015, Mr. Guzman was seen by Dr. Dorrit Ahbel, M.D., at the Veteran's Affairs Medical Center located in Sacramento, California.

41. Unlike Dr. Haskell, Dr. Ahbel conducted a series of tests and took images of Mr. Guzman's ankle.

42. Dr. Ahbel determined that the hardware installed in Mr. Guzman's ankle was in fact loose and he had developed a soft tissue infection surrounding the hardware.

43. Dr. Ahbel attempted to get Mr. Guzman to return to Dr. Haskell for further treatment, but, Mr. Guzman refused, given the lack of care by Dr. Haskell.

44. On or about November 11, 2015, Mr. Guzman was seen by Dr. Chang, an orthopedic surgeon who specializes in knee and ankle replacements in Santa Rosa, California.

45. Dr. Chang again confirmed, via x-ray, that the hardware was loose, it was collapsing and needed to be removed. Dr. Chang was seriously worried about the infection in the surrounding tissue and the damage that it might cause.

46. On November 24, 2015, Dr. Chang removed the hardware from Mr. Guzman's ankle.

47. On or about January 25, 2016, Mr. Guzman filed an Application for Disability Compensation and Related Compensation Benefits based upon his ankle issues.

48. Prior to January 25, 2016, Mr. Guzman had a 100% disability rating due to a diagnosis of Post-Traumatic Stress Disorder from his service in Vietnam.

49. Prior to January 25, 2016, Mr. Guzman had no disability rating for his right ankle.

50. In or about October of 2016, Mr. Guzman's right ankle disability was approved and rated at 30%. In determining the disability rating, a Veteran's Admiration (VA) examiner was "asked to review [Plaintiff's] claim and determine whether, through care, treatment, or examination additional disability was caused through carelessness, negligence, lack of proper skill, etc." The

examiner "found it was at least as likely as not that your ankle became worse as a result of [Plaintiff's] treatment by the VA" and that it was due to negligence on the part of VA personnel.

51. Subsequently, Mr. Guzman has experienced a number of surgeries. There have been attempts to install additional hardware but those have proven ineffective and has caused further infections and issues.

52. Ultimately, Mr. Guzman's ankle issues may be resolved by fusion of the ankle, but, given the underlying complications and infections, it is very likely that Mr. Guzman's foot will be amputated.

## FIRST CAUSE OF ACTION

### Professional Negligence (Medical Malpractice)

53. Plaintiff Guzman realleges and reincorporates each and every allegation above as if fully set forth herein.

54. Defendant had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers, consistent with the expertise that the Defendant presented to the community at large.

55. Defendant breached its duty of care to Plaintiff Guzman.

56. Specifically, Dr. Haskell committed professional negligence in the initial installation of Plaintiff's hardware on or about June 10, 2014. Further, when Dr. Haskell met with Mr. Guzman in February of 2015, he again committed medical negligence when he refused to take additional diagnostic imaging such as x-rays to confirm whether the hardware was loose or not. Even though he did not take diagnostic imaging such as x-rays, he assured Plaintiff that the hardware was not loose and his pain was caused by arthritis.

57. Dr. Haskell continued to meet with and treat Mr. Guzman for his pain between February and July of 2015, prescribing cortisone shots and pain management class for Mr. Guzman's symptoms, each time he informed Mr. Guzman that he had arthritis.

58. Dr. Haskell's treatment of Mr. Guzman from February through July of 2015 constitutes an independent course of professional negligence.

59. At all times relevant to this Complaint, the Defendant had a duty to hire competent operators, administrators, employees, agents and staff in order to meet its standard of quality of care of its patients, including Plaintiff Guzman. Defendant knew, or should have known, that the medical staff of the facility was not properly trained and/or supervised, in a manner necessary to provide a level of care for Plaintiff Guzman that met all applicable legal requirements; that demonstrated the standard and degree of care and skill required of competent health care providers; and was consistent with the expertise that the Defendant presented to the community at large.

60. Defendant breached its duty by negligently hiring incompetent, inexperienced and/or unqualified operators, administrators, employees, agents and staff.

61. Defendant had a duty to retain only competent and adequately trained operators, administrators, employees, agents and staff in order to meet its standards of quality of care of its patients, including Plaintiff Guzman.

62. Defendant breached its duty by negligently retaining incompetent, inexperienced, unqualified and/or inadequately trained operators, administrators, employees, agents and staff.

63. As a direct and proximate result of Defendant's negligence, both the initial surgery and subsequent treatment, Plaintiff Guzman sustained serious and permanent personal injuries in and about his body; he has incurred medical expenses and other damages, and will continue to incur medical expenses and other damages in the future; he was forced to endure pain, suffering and mental anguish, and we will continue to endure pain, suffering and mental anguish in the future; he has suffered a loss of the enjoyment of life, and will continue to suffer a loss of enjoyment of life in the future; and he has lost wages, and will continue to lose wages in the future.

64. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

65. Defendant is liable pursuant to 28 U.S.C. section 1346(b)(1).

///

///

7

## SECOND CAUSE OF ACTION

**Vicarious Liability, Respondent Superior, Ostensible Agency, and/or Agency**

66. Plaintiff Guzman realleges and reincorporates each and every allegation above as if fully set forth herein.

67. At all times relevant to this case, the directors, officers, operators, administrators, employees, agents, staff were employed by and/or acting on behalf of the Defendant.

68. At all relevant times to this Complaint, the directors, officers, operators, administrators, employees, agents and staff acted within their respective capacities and scopes of employment for the Defendant.

69. The directors, officers, operators, administrators, employees, agents and staffs negligently and/or recklessly, directly and proximately caused personal injury to Mr. Guzman, including both acts of omissions and acts of commission.

70. As a direct and proximate result of Defendant's negligence, both the initial surgery and subsequent treatment, Mr. Guzman sustained serious and permanent personal injuries in and about his body; he has incurred medical expenses, and other damages, and will continue to incur medical expenses, and other damages in the future; he was forced to endure pain, suffering and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future; he has suffered a loss of enjoyment of life, and will continue to suffer a loss of enjoyment of life in the future; and he has lost wages, and will continue to lose wages in the future.

71. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

72. Defendant is liable pursuant to 28 U.S.C. section 1346(b)(1).

///
///

North Bay Legal A.P.C.
703 Second Street, Suite 260, Santa Rosa, CA 95404
Tel: (707) 321-5287 Fax: (707) 636-3284

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment and relief as follows:

1. Medical expenses, lost wages, pain and suffering, future impairment and loss of enjoyment of life totaling $460,000; and

2. Costs and attorney's fees incurred in this civil action, together with such further and additional relief at law or in equity that this Court may deem proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: April 12, 2018                                North Bay Legal, A.P.C.


/s/ Michael C. Li
Michael C. Li, Esq.
Attorney for Plaintiff Guzman